UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MICHAEL TRUPEI,

        Plaintiff,

v.                                             Case No.  5:03-cv-100-Oc-10GRJ

UNITED STATES OF AMERICA,

        Defendant.
_____

## ORDER GRANTING MOTION TO DISMISS

Plaintiff initiated this case by filing a pro se, prisoner civil rights complaint pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq.  The Plaintiff is currently proceeding on an Amended Complaint.  (Doc. 14.)  Pending before the Court is the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment.  (Doc. 22.)  In the motion, the Defendant asserts that this Court lacks jurisdiction to entertain Plaintiff's claims pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, the Court concludes that the Defendant's motion is due to be granted and this case dismissed for lack of jurisdiction.

## Factual and Procedural Background

In the original Complaint, Plaintiff presented an FTCA claim of medical negligence against the United States Department of Justice and the Department

of Health and Human Services. However, because an FTCA claim may only be brought against the United States, Plaintiff was directed to file an Amended Complaint. Plaintiff filed his Amended Complaint on January 6, 2004. In the Amended Complaint, Plaintiff relates the following factual background:

During his incarceration at the Jesup Federal Correctional Institution (FCI Jesup) in November of 1992, Plaintiff made a sick call to dental health services complaining of tooth pain in the area of his number 5 bicuspid. At that time, it was decided that Plaintiff's number five bicuspid required a root canal and a root canal was performed on that tooth shortly after Plaintiff's appointment.[1]

Sometime after Plaintiff's root canal, he incurred an infection in his number 5 bicuspid tooth, which then spread to his number 4 premolar tooth. As a result, in August of 1993, Plaintiff also required a root canal on his number 4 premolar. From the time of Plaintiff's second root canal, until approximately March of 1996, Plaintiff continued to endure pain and infection in the areas of his number 5 bicuspid and number 4 premolar teeth. During that time, Plaintiff was prescribed pain relievers and antibiotics.

On March 18, 1996, while incarcerated at the medium security facility at the Coleman Federal Correctional Complex (FCC Coleman), Plaintiff developed severe pain in his number 5 bicuspid and number 4 premolar teeth. Plaintiff was seen by a staff dentist and informed that extraction of the teeth may be necessary

---

[1] Plaintiff does not provide the exact date of his root canal.

2

due to the possible failure of the previous root canal treatments.  In the meantime, Plaintiff was prescribed pain relievers and antibiotics.  Plaintiff was examined again a year later, but no additional information was discovered.

On April 17, 1998, Plaintiff again reported pain in the areas of his number 5 bicuspid and number 4 premolar teeth.  Plaintiff informed a staff dentist at FCC Coleman that his teeth were particularly painful when exposed to hot matter, such as food.  Plaintiff was advised that it was likely that his pain was being caused by a failure of the previous root canals.  Plaintiff was prescribed pain relievers and antibiotics.

On June 8, 1998, Plaintiff developed severe pain and reported to dental sick call where his number 4 premolar tooth was extracted.  After the extraction, Plaintiff requested to take possession of the extracted tooth so he may send it to another dentist for evaluation.  Plaintiffs' request was denied.

On January 12, 1999, Plaintiff reported to dental sick call complaining of a headache.  Plaintiffs' mouth was x-rayed in the area of his number 5 bicuspid.  The x-ray revealed a continuing infection.

On March 9, 1999, Plaintiff was again evaluated for a headache caused by the infection in his number 5 bicuspid.  Plaintiff was prescribed pain relievers and antibiotics.  Furthermore, the staff dentist recommended that Plaintiff be seen by an endodontist.  However, upon evaluation by the complex's Utilization Review

Committee (URC), it was determined that it was not necessary for Plaintiff to see a specialist and the recommendation was denied.

On July 6, 1999, Plaintiff initiated the administrative remedy process with regard to the URC's decision denying his referral to a specialist. On the initial remedy form, Plaintiff informed staff that for the last five years he had been suffering chronic infections from a botched root canal performed by the BOP. Because Plaintiffs' request to see a specialist was not informally resolved, on August 26, 1999, Defendant filed a formal grievance with the Warden. In that request, Plaintiff informed the Warden that he was suffering from a chronic infection that was the result of a bungled root canal performed by the BOP. Plaintiff requested to see a specialist. In denying Plaintiff's request, the Warden stated that the dental staff had continuously recommended that Plaintiff's number 5 bicuspid be extracted to alleviate his problems, but that Plaintiff had refused such treatment. In addition, the Warden noted that the URC had determined that referral to a specialist was not mandatory. Accordingly, Plaintiff's grievance was denied.

On September 20, 1999, Plaintiff appealed the Warden's denial of his grievance to the Southeast Regional Office of the BOP. Once again, Plaintiff alleged that he suffered chronic pain and infection due to a bungled root canal performed by the BOP. Plaintiff requested to be seen by a specialist. Plaintiffs' claim was receipted on September 28, 1999. However, on November 1, 1999,

the BOP informed Plaintiff that it required additional time to respond to his appeal. Because the Plaintiff believed that the Southeast Regional did not respond to his appeal in a timely manner, on December 9, 1999, Plaintiff filed an appeal to the BOP's Office of General Counsel. Plaintiff received a denial of his regional appeal on December 16, 1999. On January 3, 2000, Plaintiff's appeal to the Central Office was rejected because he had not attached a copy of his regional response to his Central Office appeal. Plaintiff amended his Central Office appeal to include the regional denial on January 24, 2000.

During the pendency of Plaintiff's Central Office appeal, Plaintiff was examined by Dr. Whitt, an endodontist in Leesburg, Florida. At that appointment, Dr. Whitt filled Plaintiff's number 5 bicuspid with "gutta percha" and cement. Shortly thereafter, Plaintiff was seen by the dental staff at FCC Coleman for a follow-up examination.

On March 13, 2000, the Central Office informed Plaintiff that it required additional time to review his appeal. The final disposition of that appeal is unclear from the record as neither party has provided the Court with a copy of the final decision, if any, by the Central Office. However, Dr. Whitt performed surgery on Plaintiff's number 5 bicuspid in August of 2000. At the conclusion of that surgery,

Dr. Whitt determined that the cause of Plaintiff's infection was the failure of the original dentist to treat both roots at the time of the original root canal in 1992.[2]

On April 15, 2002, Plaintiff filed an Administrative Tort Claim with the Department of Health and Human Services Inspector General. Plaintiff also attempted to serve that claim upon the Southeast Regional Office of the BOP on two occasions, but because he did not properly address those claims, they were returned undelivered by the United States Postal Service. Upon properly addressing those documents, Plaintiff's claim was receipted by the BOP on September 14, 2002. On September 16, 2002, the BOP rejected Plaintiff's Administrative Tort Claim as untimely pursuant to the appropriate statute of limitations. Plaintiff sought reconsideration of that decision on October 6, 2002. The BOP rejected that appeal on October 30, 2002. This suit was filed on March 21, 2003.

## **The Defendants Motion to Dismiss**

In its motion to dismiss, the United States argues that Plaintiff's claims are due to be dismissed for lack of subject matter jurisdiction. Specifically, the Defendant argues that the Plaintiff failed to file his claim within the appropriate two-year statute of limitations and, therefore, failed to properly exhaust his

---

[2] Apparently the number 5 bicuspid tooth has two roots. The dentist who performed the original root canal only treated one of those roots. Evidently, Dr. Whitt determined that the failure to treat the second root was the specific cause of Plaintiff's continuing infection.

6

administrative remedies.  In the motion, the Defendant asserts both a facial and factual attack on Plaintiff's claim of subject matter jurisdiction.

## **Standard of Review**

The Eleventh Circuit has distinguished facial and factual attacks on jurisdiction in the following manner:

> If the 12(b)(1) motion represents a facial attack on jurisdiction - that is, the facts as stated supposedly do not provide cause for federal jurisdiction - then the facts alleged by the plaintiff are given the same presumption of truthfulness as they would receive under a 12(b)(6) motion.  See Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  If, however, the 12(b)(1) motion raises a factual attack on jurisdiction - the very facts providing cause for jurisdiction are themselves challenged - then no such presumption exists and the district court is allowed to consider the facts as it sees fit.  In essence, the district court conducts a bench trial on the facts that give rise to its subject matter jurisdiction.  Consequently, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.' Id. at 413 (quoting Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).[3]

Here, because both of the Defendant's arguments hinge on the date that Plaintiff's claim accrued - a direct challenge to the very facts which give rise to jurisdiction - the facts as set forth in the Amended Complaint are not entitled to a presumption of truthfulness.  Accordingly, the Court is free to evaluate the merits of Plaintiff's jurisdictional claims.

---

[3] Barnett v. Okeechobee Hospital, 283 F.3d 1232, 1237-1238 (11th Cir 2002).

**Federal Tort Claims Act**

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401. When a tort claim accrues for purposes of the statute of limitations is a matter of federal law.[4]

"[A] medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant."[5] To start the running of the limitations period, the Plaintiff need only know of the injury and its cause, not that a legal cause of action may exist.[6] The cause of an injury is discoverable when a plaintiff realizes that the injury was "probably attributable to some act of those who treated her."[7] At that point, there is no longer any reason to toll the statute of limitations. Id.

Accrual of Plaintiff's Claim

It is undisputed that Plaintiff first discovered his injury when his tooth infection manifested in August of 1993. It is also undisputed that Plaintiff's injury was caused by the failure of the BOP dentist to treat both roots of Plaintiff's

---

[4] Mendiola v. United States, 401 F.2d 695 (5th Cir. 1968).

[5] Price v. United States, 775 F.2d 1491, 1494 (11th Cir. 1985).

[6] White v. Mercury Marine, 129 F.3d 1428, 1433 (11th Cir. 1997) (citing Kubrick v. United States, 444 U.S. 111, 100 S.Ct. 352 (1979))

[7] Price at 1493.

number 5 bicuspid tooth during the root canal performed in 1992.  Therefore, Plaintiff's FTCA claim accrued at the time he discovered that the BOP dentist failed to treat both roots on his number 5 bicuspid.  Because Plaintiff was not aware that the BOP dentist failed to treat both roots of his number 5 bicuspid until Plaintiff's consultation with Dr. Whitt in August of 2000, Plaintiff's FTCA claim accrued in August of 2000.

Timeliness of Plaintiff's Tort Claim

A tort claim must be filed with the appropriate agency within two years of the accrual of the claim.  28 U.S.C. § 2401.  A tort claim is filed upon receipt by the appropriate agency.[8]  In this Circuit, the "long recognized . . . rebuttable presumption that an item properly mailed was received by the addressee" is applicable to administrative tort claims.[9]  In order to be entitled to the presumption, the claimant must demonstrate the "(1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed."  Id at 1240.

Two years from the date Plaintiff's claim accrued was August of 2002.  Plaintiff attempted to submit his claim on three occasions.  On April 15, 2002, Plaintiff sent his claim to the BOP's southeast regional office by regular United States mail.  Plaintiff never received a response to that claim.  Because that claim

---

[8] See 28 C.F.R. § 41.2; Barnett v. Okeechobee Hospital, supra.

[9] Barnett at 1239 (quotation omitted).

9

was not properly addressed,[10] Plaintiff is due no presumption that the claim was ever received by the BOP. On that same date, Plaintiff also sent a copy of his claim to the Department of Health and Human Services in Washington D.C. That claim was sent via certified mail and the return receipt shows that the claim was received on April 29, 2002.[11] Plaintiff attempted to file his claim with the BOP's southeast office for a second time on August 19, 2002. Plaintiff sent his second claim via certified United States mail. That claim was returned as undeliverable because it was improperly addressed.[12] Finally, after correctly addressing his claim, Plaintiff's third submission was receipted by the BOP's southeast regional office on September 16, 2002. However, that claim was untimely as Plaintiff's claim was due in August of 2002.[13]

Plaintiff does not dispute that his claim was received by BOP outside the two-year statute of limitations. Nevertheless, Plaintiff argues that pursuant to 28 C.F.R. § 14.2(b)(1), the claim receipted by the Department of Health on April 29, 2002, should have been forwarded to the Bureau of Prisons. Had the Department of Health done so, his claim would have been timely received by the

---

[10] See Plaintiff's Objections (Doc. 24) at 2.

[11] See Plaintiff's Objections (Doc. 24) at Ex. 1.

[12] See Plaintiff's Objections (Doc. 24) at 2.

[13] The application of the mail-box rule in this instance makes no difference to the timeliness of Plaintiff's claim. See Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988) (a *pro se* prisoner's notice of appeal is filed when delivered to prison officials for transmittal to the court); Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993) (extending the holding in Houston to § 1983 cases and claims under the Federal Tort Claims Act). Plaintiff's third claim was sent on September 3, 2002. See Plaintiff's Objections (Doc. 24) at 2.

BOP. Therefore, Plaintiff argues that because his claim was timely filed with the Department of Health, and should have been forwarded to the BOP, his claim is not barred by the two-year statute of limitations.

Section 14.2(b)(1) states:

> A claim shall be presented to the Federal agency whose activities gave rise to the claim. *When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency*, if the proper agency can be identified from the claim, and advise the claimant of the transfer. If transfer is not feasible the claim shall be returned to the claimant. The fact of transfer shall not, in itself, preclude further transfer, return of the claim to the claimant or other appropriate disposition of the claim. A claim shall be presented as required by 28 U.S.C. 2401(b) as of the date it is received by the appropriate agency. (Emphasis added)

What Plaintiff fails to consider, however, is that 28 C.F.R. § 14.2 is applicable to the Department of Justice, not the Department of Health. The Department of Health was under no obligation under § 14.2(b)(1) to forward Plaintiff's claim. Section 14.2(b)(1) requires only agencies within the Department of Justice to forward misfiled claims. Plaintiff cites no similar regulation that would have required the Department of Health to forward his claim to the BOP. Therefore, Plaintiff's claim filed with the Department of Health on April 29, 2002, did not toll the running of the statute of limitations and Plaintiff's claim was untimely filed with the BOP in September of 2002. Accordingly, this Court is

11

barred from examining the merits of Plaintiff's claims and this case is due to be dismissed with prejudice.

## Conclusion

For the reasons set forth in this Order, the Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 22) is **GRANTED**. The Plaintiff failed to file his claim within the two-year statute of limitations period and this Court does not have jurisdiction to entertain his claim. Accordingly, the Clerk is directed to enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 27th day of September 2005.

_____
UNITED STATES DISTRICT JUDGE

c:  Michael Trupei
    Counsel of Record